PEOPLE v JACKSON

Docket No. 218338. Submitted September 5, 2000, at Grand Rapids.
    Decided March 9, 2001, at 9:00 A.M. Leave to appeal denied, 465
    Mich ___.

    Damon A. Jackson was found guilty, but mentally ill, of first-degree
    child abuse and first-degree criminal sexual conduct after a bench
    trial in the Kent Circuit Court, Donald A. Johnston, J., at which the
    defendant raised an insanity defense. The defendant appealed.

        The Court of Appeals *held*:

        The trial court did not err in finding that the defendant was not
    legally insane at the time the charged acts occurred. As provided in
    MCL 768.21a, an individual is legally insane if as a result of mental
    illness or as a result of being mentally retarded that person lacks
    substantial capacity either to appreciate the nature and quality or
    the wrongfulness of the person's conduct or to conform the per-
    son's conduct to the requirements of the law. In this case, the trial
    court did not err in finding that the defendant had failed to prove
    by a preponderance of the evidence that he lacked such capacity.
    Testimony by the defendant's expert, a forensic clinical psycholo-
    gist, that the defendant would not have committed the crimes had a
    courtroom deputy been present and testimony by the defendant
    that he could control his behavior in public established that the
    defendant possessed substantial capacity to appreciate the wrong-
    fulness of his conduct and to conform his conduct to the require-
    ments of the law.

        Affirmed.

CRIMINAL LAW — DEFENSES — INSANITY — LACK OF SUBSTANTIAL CAPACITY TO
    APPRECIATE WRONGFULNESS OF CONDUCT OR TO CONFORM CONDUCT TO
    REQUIREMENTS OF LAW — POLICEMAN AT THE ELBOW.

    An individual is legally insane if as a result of mental illness or mental
    retardation that person lacks substantial capacity either to appreci-
    ate the nature and quality or the wrongfulness of the person's con-
    duct or to conform the person's conduct to the requirements of the
    law; evidence that a defendant would have committed the offense
    had a police officer been present serves as proof of lack of such
    capacity; evidence that a defendant would not have committed the

offense had a police officer been present does not necessarily indicate that the defendant had such capacity (MCL 768.21a).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *William A. Forsyth*, Prosecuting Attorney, *Timothy K. McMorrow*, Chief Appellate Attorney, and *Vicki L. Seidl*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan J. Smith*), for the defendant on appeal.

Before: DOCTOROFF, P.J., and HOLBROOK, JR., and SMOLENSKI, JJ.

PER CURIAM. At a bench trial, defendant was found guilty, but mentally ill, of first-degree child abuse, MCL 750.136b(2), and first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a). Defendant was sentenced to serve concurrent prison terms of ten to fifteen years for the child abuse conviction and twenty-five to seventy-five years for the CSC I conviction. Defendant appeals as of right, and we affirm.

Defendant's sole argument on appeal is that the trial court committed error requiring reversal by applying a different test for insanity than that set forth in the statute. Specifically, defendant claims that when considering the volitional prong of the statutory test, the trial court incorrectly relied on what is commonly known as the "policeman at the elbow" standard, i.e., would defendant have committed the crimes had there been a policeman at his elbow at the time.

The test for criminal insanity is found in MCL 768.21a and reads in pertinent part:

> It is an affirmative defense to a prosecution for a criminal offense that the defendant was legally insane when he or she committed the acts constituting the offense. An individual is legally insane if, as a result of mental illness . . . or as a result of being mentally retarded . . . that person lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law.

This test is modeled on § 401 of the Model Penal Code (MPC),[1] which is in turn a modification of the combined "*M'Naghten*[2] plus 'irresistible impulse' " test that had been adopted in many states, including Michigan. *People v Martin*, 386 Mich 407, 418; 192 NW2d 215 (1971). See also *People v Durfee*, 62 Mich 487, 494; 29 NW 109 (1886). Defendant's claim of error focuses on the volitional prong of the statutory test.

As the *Martin* Court observed, the tendency to refer to the volitional prong of the common-law test by the shorthand phrase "irresistible impulse" was

---

[1] MPC § 401(1) reads:

> A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease . . . he lacks substantial capacity either to appreciate the . . . wrongfulness of his conduct or to conform his conduct to the requirements of the law.

Michigan first adopted a statutory test of insanity modeled on the MPC test in 1975. 1975 PA 180. That test reads as follows:

> A person is legally insane if, as a result of mental illness . . . that person lacks substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

This definition was modified in 1994. 1994 PA 56. In addition to placing the burden of proof on the defense, the 1994 amendment also clarified that the cognitive prong also includes a defendant who "lacks substantial capacity . . . to appreciate the nature and quality . . . of his or her conduct." Such a situation arises where, for example, "*D* squeezes the neck of *V* believing that she is squeezing a lemon." Dressler, Understanding Criminal Law, § 25.04[C][1][a], p 299.

[2] *M'Naghten's Case*, 10 Cl & Fin 200; 8 Eng Rep 718 (1843).

unfortunate. In Michigan, as in most jurisdictions where it was applied, "the . . . test encompasse[d] not only a sudden overpowering, irresistible impulse but any situation or condition in which the power, 'the will power' to resist, is insufficient to restrain commission of the wrongful act." *Martin, supra* at 418.

The statutory test avoids this confusion in two important ways. First, it does not employ the misnomer "irresistible impulse." Second, the statute employs the phrase, "lacks substantial capacity."[3] While not specifying the requisite degree of impairment, the "substantial capacity" language does clearly signal that defendant need not prove that he totally lacks the capacity for self-control in order to establish the volitional prong of the statutory test.

The origin of the "policeman at the elbow" standard shows that it was rooted in the discredited all-or-nothing approach of the "irresistible impulse" test:

> Whether irresistible or not must depend upon the relative force of the impulse and the restraining force . . . .
>
> . . . Lord Bromwell, in a discussion of this subject, related the case in which a witness, to prove that a prisoner was so afflicted, related that he once became violent and killed a cat, and said he believed the impulse could not be resisted by the defendant. His lordship asked if he thought he would have killed the cat if a policeman had been present. The witness answered, "No." His lordship then said he supposed the impulse was irresistible only in the absence of a policeman. [*People v Hubert*, 119 Cal 216, 223-224; 51 P 329 (1897).]

Inherent in this view of the "policeman at the elbow" standard is the notion that in order to be judged

---

[3] The cognitive prong of the statutory test is also modified by this phrase.

insane, a defendant must show that he has been completely deprived of the power to conform his conduct to the dictates of the law. See *United States v Kunak*, 17 CMR 346, 359 (1954) (observing that "if a person would be deterred from committing the act by the presence of an arresting officer, he has the mental capacity to adhere to the right and resist its commission").

Additionally, the speculative situation posed by the "policeman at the elbow" hypothetical "has limited bearing on the defendant's capacity to conform to norms not immediately represented by an authority figure possessing the power of enforcement." MPC § 401, p 172, n 18. "The question is not properly put in terms of whether he would have capacity to conform in some untypical restraining situation—as with a[] . . . policeman at his elbow. The issue is whether he was able to conform in the unstructured condition of life in an open society . . . ." *United States v Brawner*, 153 US App DC 1, 23; 471 F2d 969 (1972).

This is not to say that the "policeman at the elbow" standard has no relevance. If it is approached as being one of many avenues of inquiry, the hypothetical is directly probative of one dimension of a defendant's capacity to control his conduct as required by law. Certainly, if credible testimony offered by a defendant establishes that he could not refrain from acting even if faced with immediate capture and punishment, then the defendant would have gone a long way toward establishing that he lacked the requisite substantial capacity to conform to requirements of the law. The converse, however, is not true. A defendant who could resist until the threat posed by a policeman had passed does not necessarily possess

the capacity to conform.[4] Nonetheless, if it so chooses, the prosecution must be allowed to explore the depths of defendant's alleged incapacity by posing the "policeman at the elbow" hypothetical inasmuch as the question is probative of a defendant's ability to conform to the requirements of the law under the most extreme circumstance of immediate capture and punishment. See *State v Gaffney*, 209 Conn 416, 421; 551 A2d 414 (1988).

In the case at hand, the "policeman at the elbow" standard was raised by the prosecution during cross-examination of the forensic clinical psychologist called to testify by defendant. In allowing the prosecution to pose the hypothetical, the trial court observed that while not dispositive, the question "may be illustrative of at least one dimension of the issue . . . , as long as we understand that this is not a door closer." The problem with the trial court's handling of the issue was that it appears that despite the above disclaimer, the court treated the expert's response as if it was almost dispositive on the issue of insanity. After concluding that defendant had met his burden of proving mental illness, the court observed that defendant's expert testified that defendant would not have committed the offense for which he stands convicted had one of the courtroom deputies been present. The court continued:

> This is not necessarily the door closer on this particular defense, . . . but the reason it has been a longstanding question asked by prosecuting attorneys is because it goes a

---

[4] " 'Even the very severe impulse neurotic and obsessive-compulsive neurotic can momentarily postpone acting out until the certainty of immediate capture is gone.' " MPC § 401, n 18, quoting Manfred S. Guttmacher, MD, MPC § 401, App A, p 191.

long ways on the continuum in that direction. There may be some good reason or explanation why a person who would commit a crime were the police watching him might still lack the capacity to conform his conduct[] to the requirements of the law. *But it seems to me, at that point, it becomes a difficult matter of demonstration.* [Emphasis added.]

If not a "door closer," the court's assertion that it would be "difficult" for defendant to demonstrate that he lacked the requisite capacity to conform sounds to us like a significant and improper bar to defendant's access to the insanity defense. We do not believe this posture properly reflects the statutory rejection of the total incapacity interpretation of the volitional prong of insanity. While defendant's acknowledgment that he could have conformed if a law enforcement official were present is one factor that may be considered, it is not a paramount hurdle that must be surmounted. To say that when making such a concession, a defendant will have a more difficult time establishing that he lacks the substantial capacity to conform, tends to improperly shift the statutory standard back toward the discredited restrictive reading of the old "irresistible impulse" test.

Nonetheless, we do not believe the trial court erred in finding that defendant failed to prove his insanity defense. In examining the evidence of defendant's insanity claim, the trial court stated it was being guided by the two-step approach laid out in CJI2d 7.11(6), which reads:

To be legally insane, a person must first be either mentally ill or mentally retarded . . . . But that is not enough. To

be legally insane, the person must, because of his[5] mental illness or mental retardation, lack substantial capacity either to appreciate the nature and quality of the wrongfulness of his conduct or to conform his conduct to the requirements of the law.

The trial court first determined that defendant had satisfied the mental illness prong of the statutory test. The court noted that the parties' psychologists disagreed on whether defendant "suffers from episodes or transient dissociate events or . . . from a dissociate disorder as identified in the DSM IV."[6] The court concluded that, on balance, defendant had proved by a preponderance of the evidence that he did indeed suffer from a dissociate disorder when he committed the charged acts. This conclusion is unchallenged on appeal.

The second step in the analysis—whether defendant at the time he committed the charged acts lacked the "substantial capacity to appreciate either the nature and the quality or the wrongfulness of his . . . conduct or to conform his . . . conduct to the requirements of the law"—necessarily becomes an issue of degree. The testimony by defendant's psychological expert that defendant would not have committed the charged sexual abuse had an armed court deputy been in the room shows that he appreciated the nature of his conduct, as well as an understanding that such conduct is criminal. The deputy, standing for the governmental prohibition against the conduct,

---

[5] We remove the gender neutral choice found in the jury instruction, substituting the male pronoun throughout.

[6] DSM IV is the accepted abbreviation for the *Diagnostic and Statistical Manual of Mental Disorders* (4th ed) (Washington, DC: American Psychiatric Ass'n, 1994).

represents automatic and instant punishment for violation of the law. We believe that given the seriousness of the charges, this appreciation of the criminality of his actions also implies an understanding that society would consider this conduct immoral or wrongful. This conclusion is supported by defendant's admission that he could control his conduct when in front of other people. "I can control this in front of people," defendant acknowledged. "I mean, like I said, I'm not a stupid person. I know what you can and cannot do." We believe this clearly indicates that defendant understood the pervasive societal prohibition against such conduct.

Defendant's candid acknowledgment that he could and did control his behavior in public also shows that he possessed the substantial capacity to conform his conduct to the requirements of the law. As the trial court noted, no evidence was presented showing that defendant ever harmed his son in the presence of others. We believe his ability to restrain himself until the threat of immediate detection by others had passed evidences a capacity to conform well beyond the ephemeral. In fact, defendant's declaration that he could control himself in front of others evidences a level of capacity to refrain that rises to and beyond being substantial. Defendant also admitted that he took his son to the bathroom on the night when the charged acts occurred precisely because he did not want others in the house to hear what was going on. This kind of purposeful behavior to avoid discovery only further confirms the conclusion that defendant had an appreciable ability to stop himself when he chose to do so. All of these circumstances were examined by the trial court and helped form the basis

of its decision. Accordingly, we conclude that the trial court did not err in finding that defendant was not legally insane at the time the charged acts occurred.

Affirmed.