# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARSHALL SCOTT BRABO,

        Defendant-Appellant.

UNPUBLISHED
June 9, 2015


No. 320135
Kent Circuit Court
LC No. 13-002255-FC

Before: HOEKSTRA, P.J., and O'CONNELL and MURRAY, JJ.

PER CURIAM.

Defendant, Marshall Scott Brabo, appeals as of right his conviction following a jury trial of assault with intent to commit murder, MCL 750.83, and his sentence of 24 to 36 years' imprisonment. We affirm.

## I. FACTS

This case arises from Brabo's brutal beating of the victim during the pendency of divorce proceedings between them. The victim filed for divorce from Brabo in November 2012. The victim and the victim's daughter both testified that Brabo was verbally and emotionally abusive during the marriage.

According to the victim, she met with Brabo several times after she filed for divorce, including on the evening of February 15, 2013. Brabo and the victim met at one of their rental homes, and the victim cooked dinner. After dinner, the victim began watching television in the living room while Brabo cleaned up the kitchen. Brabo then suggested that he and the victim go into a bedroom to watch television. The victim suggested watching television in the living room, but Brabo insisted that they watch television in the bedroom. She and Brabo went into the bedroom and watched television.

At about 7:30 p.m., the victim stated that she needed to leave. The victim and Brabo got off the bed. Brabo moved toward a dresser in the room and stated, "I talked to my lawyer, and I didn't like what she had to say. . . . I don't know how to tell you this tonight, but we're both going to die." The victim turned and saw that Brabo was holding a crowbar, which he used to strike her in the face. Brabo also retrieved a wrench from the dresser and began beating her with both the crowbar and wrench.

-1-

The victim begged Brabo not to kill her and to let her go, but Brabo continued to beat the victim off and on for "hours." The victim testified that, as a nurse, she knew that if she let Brabo hit her in the temple she would probably die, so she tried to protect her vital areas with her arms and by turning her head. The victim eventually faked a seizure, after which she felt a "huge blow" to the back of her head and blacked out for a few minutes. The victim was in and out of consciousness, but she realized that Brabo was occasionally checking her heartbeat and breathing. Eventually she heard Brabo pour some pills into his hand. After waiting until she was certain that Brabo had fallen unconscious, the victim crawled to her vehicle, which she used to drive to a restaurant to summon help.

Crime scene technician Jerry Shaffer testified that after he entered the house, he found a chair in the entryway with a note on it to the victim's daughter. The note instructed the daughter not to enter the house and to call the police. One of the envelopes stated that "in the event of the death of Pamela and Marshall Brabo, this is the guideline to follow," and it contained detailed instructions inside. The note and detailed instructions did not have any blood on them. An officer testified that Brabo had a "significant amount" of blood on his hands when he was arrested.

During closing arguments, trial counsel contended that Brabo did not intend to kill the victim and asked the jury to convict Brabo of assault with the intent to do great bodily harm. The jury convicted Brabo of one count of assault with intent to commit murder. The trial court exceeded the recommended sentencing range of 9 to 15 years' imprisonment and sentenced Brabo to serve 24 to 36 years' imprisonment. Brabo now appeals.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

### A. STANDARDS

A criminal defendant has the fundamental right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). Generally, when reviewing an ineffective assistance of counsel claim, this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). But a defendant must move the trial court for a new trial or evidentiary hearing to preserve a claim that his or her counsel was ineffective. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973); *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). In this case, Brabo did not move for a new trial or evidentiary hearing. Therefore, his claims are unpreserved, and our review is limited to mistakes apparent from the record. See *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003). We must consider the possible reasons for counsel's actions. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012).

To prove that his defense counsel was not effective, the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant. *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). The defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy. *Vaughn*,

491 Mich at 670; *Unger*, 278 Mich App at 242. We give defense counsel broad discretion in matters of trial strategy because counsel may be required to take calculated risks to win a case. *Pickens*, 446 Mich at 325. A defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. *Id*. at 312.

## B. INSANITY DEFENSE

Brabo contends that trial counsel was ineffective for failing to pursue an insanity defense because Brabo had a history of mental illness. We disagree.

"The role of defense counsel is to choose the best defense for the defendant under the circumstances." *Pickens*, 446 Mich at 325. Defense counsel may be ineffective for failing to reasonably investigate a defendant's substantial defenses. See *Strickland*, 466 US at 691. For purposes of an insanity defense, MCL 768.21a(1) states that:

> An individual is legally insane if, as a result of mental illness . . . that person lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law. Mental illness or having an intellectual disability does not otherwise constitute a defense of legal insanity.

A defendant who can control his or her behavior and understands that society prohibits his or her conduct is not insane. *People v Jackson*, 245 Mich App 17, 23-24; 627 NW2d 11 (2001). Courts may consider a defendant's purposeful behavior when considering an insanity defense. See *Id*.

In this case, trial counsel stated on the record that Brabo did not intend to pursue an insanity defense. Though Brabo was diagnosed with bipolar disorder and attention deficit hyperactivity disorder, there was no indication that those mental illnesses significantly impaired his judgment and behavior. Instead, the record established that Brabo took medication for his mental illnesses and successfully managed the parties' finances and rental properties after his diagnoses. Brabo relies on a diagnosis of depression from the department of corrections that he obtained *after* he was convicted. This diagnosis specifically indicates that Brabo suffered from depression arising out of his conviction.

Further, the record also establishes that Brabo methodically planned the assault and understood the wrongfulness of his actions: on the morning of the assault, Brabo transferred all the money from his and the victim's joint checking account into a sole account; Brabo left detailed instructions that it is unlikely he wrote after the assault because he had blood on his hands and the papers did not have blood on them; Brabo left a note apologizing to the victim's daughter; Brabo hid the tools used to assault the victim in the bedroom dresser and then persuaded the victim to watch television in the bedroom instead of the living room; and the victim testified that Brabo was "very controlled" and "very matter of fact" when informing her that she was going to die and when assaulting her. Given these facts, it was objectively reasonable for counsel to decide not to pursue an insanity defense. Brabo's planning demonstrated purposeful behavior, and his apology to the victim's daughter showed that he knew

-3-

his conduct was wrongful. Therefore, counsel reasonably could have thought that Brabo would be unable to sustain his burden to prove an insanity defense.

Additionally, Brabo states in his supplemental pro-per brief on appeal, filed pursuant to Michigan Supreme Court Order 2004-6, Standard 4, that counsel informed him that he should not pursue an insanity defense because he should not want the stigma of an insanity defense. This is another reason why counsel, when the defense strategy was to seek a conviction on a lesser offense, might reasonably believe that pursuing an insanity defense could hurt Brabo's case. This is a prime example of a case in which counsel's available defenses were contradictory. See *Pickens*, 446 Mich at 325. Pursuit of an insanity defense would further draw attention to Brabo's methodical planning before the assault and would undermine the defense strategy of contending that Brabo simply "snapped" and assaulted his wife without intending to kill her.

For these reasons, we conclude that counsel's decision not to pursue an insanity defense was objectively reasonable.

## C. ADDITIONAL ISSUES

In his pro-per supplemental brief, Brabo raises several additional issues concerning the effectiveness of counsel.

First, Brabo contends that trial counsel was ineffective for failing to request an instruction on the offense of felonious assault. We disagree.

Brabo premises his argument on his belief that felonious assault is a lesser included offense of murder. Brabo is incorrect. "[F]elonious assault is not a necessarily included lesser offense of assault with intent to commit murder." *People v Vinson*, 93 Mich App 483, 485; 287 NW2d 274 (1979). This is because felonious assault requires proof of an element that assault with intent to murder does not—that the assault involved a dangerous weapon. *Id*. at 486. Because Brabo was not entitled to an instruction on felonious assault, we conclude that counsel was not ineffective for failing to request this instruction.

Second, Brabo contends that counsel was ineffective because she inadequately explained to the jury the difference between assault with intent to do great bodily harm less than murder and assault with intent to commit murder. We conclude that this assertion lacks merit. It is the trial court's duty to instruct the jury on the elements of the law, see *People v Duncan*, 462 Mich 47, 53; 610 NW2d 551 (2000), not trial counsel's duty to do so. Further, trial counsel extensively explained the pieces of evidence that she believed would support a finding on the sole disputed element, whether Brabo intended to kill the victim.

Third, Brabo contends that trial counsel was ineffective because she failed to adequately investigate and cross-examine the victim. Defense counsel's decisions regarding what evidence to present and how to call and investigate witnesses are matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Trial counsel need not impeach a witness on each and every contradictory aspect of his or her statements. See *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987).

In this case, trial counsel impeached the victim regarding the accuracy of the victim's recollection of events. For instance, the victim testified that she did not bite Brabo, which contradicted medical evidence of bite marks on Brabo's arms. That trial counsel did not impeach the victim on every minor inconsistency that Brabo raises on appeal does not demonstrate that trial counsel's strategy was ineffective. Trial counsel also brought out several facts that supported the defense theory of the case, including that Brabo had a knife but did not stab the victim. We conclude that trial counsel's cross-examination of the victim was not objectively unreasonable. Further, we are not convinced that counsel's failure to cross-examine the victim on the inconsistencies that Brabo raises on appeal affected the outcome of this case.

Fourth, Brabo contends that counsel was ineffective because she failed to call mitigating witnesses. Brabo provides no facts to support this assertion and does not indicate which witnesses trial counsel should have called. In contrast, the sentencing letters from members of Brabo's neighbors and immediate family recounted negative incidents with Brabo and urged the trial court to sentence Brabo harshly. This indicates that such mitigating character witnesses may not have been available. Without some indication that a witness would have testified favorably, a defendant cannot establish that counsel's failure to call the witness would have affected the outcome of his or her trial. *People v Pratt*, 254 Mich App 425, 430; 656 NW2d 866 (2002). We conclude the record does not support this assertion.

Fifth, Brabo contends that counsel was ineffective for failing to challenge the fact he waived his constitutional rights while he was under the influence of drugs at the hospital. We conclude that this assertion does not warrant relief.

"Statements of an accused during custodial interrogation are inadmissible unless the accused knowingly, voluntarily, and intelligently waived his Fifth Amendment rights." *People v Mayes (After Remand)*, 202 Mich App 181, 190; 508 NW2d 161 (1993); *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). In this case, Brabo's statements to the deputy were not admitted at trial. Rather, the deputy testified that he attempted to interview Brabo, but Brabo was passing in and out of consciousness. The deputy testified about Brabo's demeanor, not his statements. Therefore, any objection on the part of trial counsel would have been meritless.

Sixth, Brabo contends that counsel was ineffective for failing to challenge various issues during sentencing. Again, we disagree.

Counsel is not ineffective for failing to make futile challenges. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Our review of the trial court's assessment of offense variables (OVs) 3, 6, 7, and 8 indicates that a preponderance of the record evidence supported the trial court's assessments. Counsel was not ineffective for failing to make futile challenges to these assessments. Counsel did in fact challenge the trial court's decision to depart from the sentencing guidelines but, as discussed later in this opinion, the trial court properly departed from the sentencing guidelines. Any further challenge would have been futile.

Further, while Brabo contends that he did not have sufficient time to review his presentence investigation report (PSIR), the record does not support this assertion. Trial counsel stated on the record that Brabo had reviewed the PSIR and did not have any additions or

changes, and Brabo did not indicate during sentencing that he was unprepared. Finally, counsel was not ineffective regarding the contents of a letter to which the prosecution referred at sentencing. Trial counsel did challenge the letter and, as discussed later in this opinion, the letter did not prejudice Brabo because the trial court did not consider it.

In sum, we reject Brabo's various challenges to the effectiveness of his trial counsel.

### III. SENTENCING

### A. DEPARTURE

Brabo contends that the trial court erred when it departed upward from the sentencing guidelines because it failed to state objective, verifiable reasons or articulate why its sentence was proportional. We disagree with both contentions.

When reviewing a trial court's departure from the sentencing guidelines, this Court reviews for clear error the trial court's factual finding that a particular factor in support of departure exists. *People v Babcock*, 469 Mich 247, 264; 666 NW2d 231 (2003). We review de novo whether a factor is objective and verifiable. *Id*. We review for an abuse of discretion the trial court's determination that the amount of its departure and the factors in a particular case are substantial and compelling. *Id*. at 264-265. An abuse of discretion occurs when the trial court chooses an outcome falling outside the permissible range of principled outcomes. *Id*. at 269.

Our Legislature has enacted sentencing guidelines. MCL 769.34. A trial court may depart from the appropriate guidelines range only if it states on the record substantial and compelling reasons for the departure, and the facts that support those reasons are objective and verifiable, keenly grab our attention, and are of considerable worth when determining a sentence. MCL 769.34(3); *Babcock*, 469 Mich at 257. Facts are objective and verifiable when they are actions or occurrences external to the mind that can be confirmed. *People v Abramski*, 257 Mich App 71, 74; 665 NW2d 501 (2003).

Brabo contends that his lack of remorse, demeanor, and risk of future harm are not objective and verifiable reasons to justify a sentencing departure. Brabo is incorrect.

The trial court may consider evidence of a defendant's lack of remorse as it relates to the defendant's potential for rehabilitation. *People v Spanke*, 254 Mich App 642, 650; 658 NW2d 504 (2003). A trial court's *opinion or speculation* about a defendant's future dangerousness is not objective or verifiable. *People v Cline*, 276 Mich App 634, 651; 741 NW2d 563 (2007). But the trial court may base a sentencing departure on a defendant's future dangerousness if objective and verifiable facts support its finding. *Horn*, 279 Mich App at 45.

In this case, the trial court properly tied Brabo's lack of remorse to his potential for rehabilitation, and facts supported that Brabo lacked remorse and posed a future danger to the victim. At the sentencing hearing, Brabo continued to threaten the victim, stating, "we'll see something else happen later, because I'm not a quitter." Immediately after this statement, the trial court stated that this comment was "a telling insight into [Brabo's] motivations and behavior" and helped it to determine an appropriate sentence. Brabo's threat at allocution and his hostile statements about his in-laws were objective and verifiable. Further, his threat and

hostile demeanor were of considerable worth because they indicated that Brabo was not likely to be rehabilitated. We conclude that the trial court did not err when it departed upward from Brabo's sentencing guidelines.

Further, the trial court's departure must be proportionate to the defendant's conduct and criminal history. *People v Smith*, 482 Mich 292, 300; 733 NW2d 351 (2007). The trial court must justify the particular departure it made by explaining "why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been." *Id*. at 304. The trial court may justify its departure by comparing the facts of the defendant's case against the sentencing grid to explain why its sentence is more proportionate. *Id*. at 306, 309.

In this case, the trial court compared Brabo's case against the scoring grid. Specifically, the trial court stated that the guidelines "have a scoring range for you of 180 [sic: 190] points concerning the offense variable. The maximum was only a 100." It then noted that this indicated that the guidelines did not account for the savagery and brutality of Brabo's crime or severity of the victim's injuries, which included a traumatic brain injury that continued to affect her life. We conclude that the trial court adequately explained why its sentence was more proportionate than the sentencing guidelines range.

## B. UNDISCLOSED LETTER

Brabo contends that the trial court relied on inaccurate information at sentencing when it considered the contents of a letter that Brabo's cellmate sent to the prosecutor without giving Brabo an opportunity to respond to it. We disagree.

"This Court reviews a trial court's response to a defendant's challenge to the accuracy of a PSIR for an abuse of discretion." *People v Uphaus (On Remand)*, 278 Mich App 174, 181; 748 NW2d 899 (2008). Due process requires that a defendant be sentenced on the basis of accurate information and that the defendant has a reasonable opportunity at sentencing to challenge the accuracy of information on which the trial court relies. *People v Eason*, 435 Mich 228, 233; 458 NW2d 17 (1990). However, even if the defendant did not have the opportunity to challenge information, if the trial court did not rely on that information, any error is harmless. *People v McAllister*, 241 Mich App 466, 473; 616 NW2d 203 (2000).

In this case, the prosecution stated in a sentencing memorandum that another inmate wrote the prosecutor a letter stating that Brabo stated he would assault the victim differently next time by cutting off her hands and feet so that she could not escape. The trial court later stated that one of its reasons for departing from the sentencing guidelines was Brabo's continued threats to the victim. Trial counsel moved for resentencing, contending in part that the trial court improperly relied on the letter.

In denying resentencing, the trial court stated that "that one remark of the prosecution[] attributed to a cellmate of the defendant bore absolutely no bearing on his sentence . . . ." The trial court indicated that it had instead relied on Brabo's threat to the victim during allocution and the "chilling change in [Brabo's] attitude" when he began "a diatribe involving his in-laws."

We conclude that the prosecution's failure to disclose the inmate's letter constitutes harmless error. Even if the prosecution improperly raised this letter at sentencing, the trial court did not consider this letter or rely on it when it departed from Brabo's sentencing guidelines.

## IV. CHOICE OF COUNSEL

In his Standard 4 brief, Brabo contends that the trial court violated his Sixth Amendment right to counsel of his choosing. We disagree.

Generally, whether a defendant's right to counsel was violated is a constitutional issue that this Court reviews de novo. *People v Hickman*, 470 Mich 602, 605; 684 NW2d 267 (2004). But to preserve an issue, the defendant must raise it before the trial court. *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). Brabo did not raise this issue before the trial court. Therefore, the issue is unpreserved and we will review it for plain error affecting Brabo's substantial rights. *People v Carines*, 460 Mich 750, 764-765; 597 NW2d 130 (1999).

Both the Michigan and United States Constitutions guarantee a criminal defendant the right to counsel. US Const, Am VI; Const 1963, art 1, § 20. This includes the right to retain counsel of the defendant's choosing if the defendant can afford to do so. *People v Portillo*, 241 Mich App 540, 542-543; 616 NW2d 707 (2000). "In contrast, an indigent defendant is entitled to the appointment of counsel, but he does not have the right to have counsel of his choosing appointed." *Id*. at 543.

In this case, the trial court advised Brabo at his preliminary hearing that if he could not afford an attorney, the trial court would appoint one for him. While Brabo initially indicated that he intended to hire an attorney, on February 19, 2013, the day after the preliminary hearing, Brabo filed an affidavit indicating that he was indigent. The record contains no indication that Brabo sought substitute counsel, sought access to funds to retain an attorney, sought to retain counsel, or was unhappy with his public defender. Although Brabo makes various assertions in his Standard 4 brief about the trial court holding his money hostage, the record before this Court does not support his allegations. Our review is limited to the record on appeal, which includes only the documents and exhibits filed in the trial court. MCR 7.210(A)(1). The record before this Court indicates that Brabo stated he was indigent and the trial court appointed counsel.

Further, we note that even if we accepted Brabo's unsupported allegations, Brabo would still not be entitled to relief. A party may not create the error that it seeks to correct on appeal, even inadvertently. *People v Szalma*, 487 Mich 708, 726; 790 NW2d 662 (2010). Brabo alleges that the trial court began holding his money hostage in July 2013. But Brabo declared that he was indigent in February 2013, well before any alleged impropriety regarding his funds. Even if the trial court erred by appointing Brabo counsel instead of allowing Brabo to retain counsel, it only did so because Brabo indicated that he was indigent.

We conclude that the record does not support Brabo's assertions that the trial court improperly deprived him of access to funds for his defense.

We affirm.

/s/ Joel P. Hoekstra
/s/ Peter D. O'Connell
/s/ Christopher M. Murray