*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JERMAL DONTE CLARK,

        Defendant-Appellant.

UNPUBLISHED
September 17, 2019

No. 344701
Kalamazoo Circuit Court
LC No. 2013-001512-FC

Before: MURRAY, C.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Defendant was convicted in a bench trial of guilty but mentally ill, MCL 768.36, of first-degree premeditated murder, MCL 750.316. He was sentenced as a fourth habitual offender, MCL 769.12, to life in prison without the possibility of parole. The trial focused on the defense of legal insanity, MCL 768.21a, and entailed only stipulated facts and expert testimony from Dr. Martha Smith, called by the defense, and Dr. Jeffrey Wendt, called by the prosecution. The trial court found that defendant had a substantial capacity to appreciate the wrongfulness of his conduct, and thus failed to meet his burden of showing that he was legally insane. On direct appeal, this Court vacated and remanded "for a finding by the trial court regarding whether defendant established by a preponderance of the evidence that he lacked the substantial capacity to conform his conduct to the requirements of the law." *People v Clark*, unpublished per curiam opinion of the Court of Appeals, issued August 10, 2017 (Docket No. 332297), p 3. On remand, the trial court affirmed defendant's conviction, finding that he failed to establish by a preponderance of the evidence that he lacked the substantial capacity to conform his conduct to the requirements of the law. Defendant appeals as of right. We affirm.

Defendant was previously diagnosed with schizophrenia and bipolar disorder, and suffered from symptoms of acute psychosis, including hallucinations and delusional beliefs. Despite being prescribed medications to treat the disease, defendant was unmedicated the month leading up to the offense. On October 6, 2013, defendant lived with his brother, Damien Clark, Damien's girlfriend, Taneasha Sanders, and Taneasha's mother, Rita Williams. Several times throughout that day, defendant was found resting his hands on, picking up, and holding kitchen knives. Clark and Sanders redirected defendant's behavior away from the knives by telling him

to stop, or to put them down. Later that day, after Clark and Sanders left for the Kalamazoo Transportation Center, defendant stabbed and killed Williams. After the murder, defendant cleaned and put away the knife, and dragged Williams's body to the basement. He then walked to the Kalamazoo Transportation Center, and purchased a bus ticket to Chicago.

Defendant argues that a preponderance of the evidence demonstrates that he lacked the substantial capacity, because of his mental illness, to conform his conduct to the requirements of the law, and that the trial court clearly erred by failing to accept Dr. Smith's opinion that defendant was legally insane at the time of the offense. In the alternative, defendant asserts that his conviction was against the great weight of the evidence regarding insanity.

"We review de novo a challenge to the sufficiency of the evidence in a bench trial, viewing the evidence in the light most favorable to the prosecution[.]" *People v Ventura*, 316 Mich App 671, 678; 894 NW2d 108 (2016). In actions tried without a jury, this Court reviews a trial court's factual findings for clear error, and its conclusions of law de novo. MCR 2.613(C); *People v Connor*, 209 Mich App 419, 423; 531 NW2d 734 (1995). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006).

To be determined legally insane, under MCL 768.21a(1), a person must first establish the existence of mental illness at the time of the offense. However, this alone is not enough. The person must, because of his mental illness, lack the substantial capacity, at the time of the offense, to either (1) appreciate the nature and quality or the wrongfulness of the conduct at issue, or (2) conform his conduct to the requirements of the law. MCL 768.12a(1). "The defendant has the burden of proving the defense of insanity by a preponderance of the evidence." MCL 768.21a(3); see also *People v Fackelman*, 489 Mich 515, 544; 802 NW2d 552 (2011).

The pertinent question on appeal is whether defendant proved, by a preponderance of the evidence, the second element of legal insanity, specifically, whether he lacked the substantial capacity to conform his conduct to the requirements of the law. MCL 768.21a(1), (3). Factors that weigh against a finding of the second element include, but are not limited to: (1) defendant's appreciation of the nature of his conduct and his understanding that the conduct was criminal; (2) the ability to control his own behavior; and (3) his ability to restrain himself until the threat of immediate detection has passed. *People v Jackson,* 245 Mich App 17, 24-26; 627 NW2d 11 (2001).

The trial court did not clearly err in ruling that defendant presented insufficient evidence that he lacked the substantial capacity to conform his conduct to the requirements of the law because a preponderance of the evidence demonstrates that he "appreciated the nature of his conduct, as well as an understanding that such conduct is criminal." *Id*. at 24. This Court has said that expert testimony that a defendant would not have committed a crime had an armed deputy been in the room demonstrates an appreciation of his conduct and an understanding that such conduct is criminal. *Id*. at 24-25. Dr. Wendt testified at trial that defendant would not have committed the murder had a police officer been in the home with him and Williams on October 6, 2013. Dr. Wendt's theory that defendant could conform his conduct to the requirements of the law is also supported by the evidence that defendant actively resisted

command hallucinations on the morning of the offense, and later surrendered to officers of his own accord. The trial court may infer, from defendant's appreciation of the criminality of his actions, that he also understood the widespread societal prohibition against such immoral or wrongful conduct. *Id*. at 24-25.

The evidence further supports the conclusion that defendant had the ability to control his behavior in front of others. Defendant acknowledged, during an interview with Dr. Wendt, that he has a choice to follow the command hallucinations. And he resisted certain command hallucinations on the day of the murder. Voices allegedly commanded defendant to cut Williams's head off, but he did not. Defendant explained to Dr. Wendt that he did not do so because he thought it was too outrageous. Dr. Wendt opined that if defendant's actions were directed exclusively by the command hallucinations, as the defense argues, then his conduct would have entirely conformed to those hallucinations.

Additionally, defendant's "declaration that he could control himself in front of others evidences a level of capacity to refrain that rises to and beyond being substantial." *Id*. at 25. Defendant's medical history supports the finding that defendant could refrain from following what his hallucinations commanded. In the past, voices commanded defendant to kill himself, to shoot himself, to jump off a bridge, and to attack a fellow inmate at the jail, but resisted each time. In the vast majority of recorded command hallucinations, defendant chose to resist, and took steps to stop them. In one instance, he called 911 for help, and in another, he voluntarily committed himself to the hospital. Dr. Wendt asked defendant why a command to murder Williams was any different from those directed at him, and defendant answered, "Well, I guess 'cause it was somebody else and not me." Dr. Wendt reasoned that defendant's response indicated "an analysis of the pain involved, the consequences personally, and it involves an ability to reflect and make a decision about it in contrast to an immediate and unstoppable urge to do what he's told to do." Viewed in the light most favorable to the prosecution, defendant's exhibited ability to make a choice proves that he had the substantial capacity to conform his conduct to the requirements of the law.

Finally, the evidence supports a finding that at the time of the murder, defendant had the "ability to restrain himself until the threat of immediate detection by others had passed . . . ." *Id*. That morning, defendant experienced auditory hallucinations commanding him to kill Williams, but he initially resisted. Defendant did not act until he was alone with Williams—noting to Dr. Wendt that he believed that his brother would have tried to stop him from killing Williams if he was home. Dr. Wendt explained that defendant's capacity to predict that the best time to kill Williams was when they were alone indicates that he was able to plan what he is going to do and when he is going to do it.

Furthermore, defendant's "purposeful behavior to avoid discovery only further confirms the conclusion that defendant had an appreciable ability to stop himself when he chose to do so." *Id*. Immediately after the murder, defendant engaged in goal-oriented and organized behaviors. Defendant cleaned the murder weapon to avoid leaving a clue, concealed Williams's body by moving her to the basement, and attempted to flee to a larger city where it would be harder to find him. Defendant's purposeful behavior demonstrated his ability to think clearly and cohesively, and the capacity to control his conduct.

In light of the evidence presented, we affirm the trial court's order denying defendant's motion for a new trial on the basis that the verdict was against the great weight of the evidence. The trial court did not err in concluding that defendant failed to prove by a preponderance of the evidence that he lacked the substantial capacity to conform his conduct to the requirements of the law, and therefore could not establish that "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009).

Affirmed.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood