PEOPLE v LIPPS

Docket No. 87439. Submitted November 3, 1987, at Grand Rapids. Decided March 8, 1988.

Darryl R. Lipps was convicted of assault with intent to murder and felonious assault following a jury trial in St. Joseph Circuit Court, James P. Noecker, J. The charges arose out of an assault by defendant with a knife upon his former wife and her fiancé. Defendant's defense at trial was insanity. Defendant appealed.

The Court of Appeals *held:*

1. Since defendant failed to raise the question of the propriety of the jury instructions by a timely objection in the trial court, the issue will be considered on appeal only if the failure to consider the issue would result in a miscarriage of justice. The instructions given by the trial court were proper.

2. The failure to object to the prosecutor's cross-examination of defendant's expert witness precludes appellate review absent a showing of a miscarriage of justice. The questions to which defendant now objects were proper cross-examination since the defense had already opened the door on the question of the nature of defendant's personality, including his negative personality traits. Further, evidence of such traits, as well as evidence of alleged prior bad acts, was properly brought before the court, since such evidence was admissible because it was germane to the question of defendant's sanity.

3. Since defendant made no objection before the trial judge based upon the fact that the trial judge presided over defendant's divorce from his former wife, made no motion to vacate sentence, and gave no specific indication of what information from the divorce the trial judge might have improperly considered in imposing sentence, defendant waived any right to complain on appeal regarding the sentencing process.

Affirmed.

REFERENCES

Am Jur 2d, Appeal and Error § 555.

Am Jur 2d, Criminal Law §§ 71, 74, 78.

Am Jur 2d, Trial §§ 573-575.

Modern status of test of criminal responsibility—state cases. 9 ALR4th 526.

1. Criminal Law — Appeal — Preserving Question.

  Issues not preserved by an appropriate and timely objection in the trial court will not be reviewed by the Court of Appeals except where the failure to review the issue will result in a miscarriage of justice.

2. Jury — Jury Instructions.

  Jury instructions must be read as a whole on appeal and not extracted piecemeal in an effort to establish error mandating reversal.

3. Criminal Law — Evidence — Cross-Examination — Scope of Examination.

  A criminal defendant who in the presentation of his insanity defense brings out testimony concerning his manipulative, possessive, jealous, exploitive, hostile, cruel and vindictive nature will not be heard to complain about the prosecutor making further inquiry about those personality traits on cross-examination.

4. Criminal Law — Evidence — Defenses — Insanity.

  Any and all conduct of an accused is admissible as evidence where the defense of insanity has been raised.

5. Criminal Law — Sentencing — Appeal — Waiver.

  A defendant waives any right he may have had to complain that he was prejudiced by the fact that he was sentenced on a conviction of assaulting his former spouse by the judge who presided in the divorce action where there was no objection raised before the trial court, no motion in the trial court seeking vacation of the sentence and no specific indication of what information the trial court might have learned in the divorce proceeding which would have prejudiced the sentencing process.

*Frank J. Kelley*, Attorney General, *Louis J. Caruso*, Solicitor General, and *Robert Cares*, Prosecuting Attorney, for the people.

State Appellate Defender (by *James Krogsrud*), for defendant on appeal.

Before: Wahls, P.J., and Beasley and D. A. Burress,* JJ.

Per Curiam. On April 22, 1985, defendant, Darryl R. Lipps, was convicted by a jury of assault with intent to murder, MCL 750.83; MSA 28.278, and felonious assault, MCL 750.82; MSA 28.277, for a March 24, 1984, attack upon his ex-wife, Joyce Peterson, and her then-fiancé (now husband) Albert "Roy" Peterson, while the couple slept in the former marital home located in Sturgis, Michigan. On July 29, 1985, the St. Joseph Circuit Court sentenced defendant to a term of imprisonment of fifteen to thirty years for the conviction of assault with intent to murder and to 1½ to 4 years for the conviction of felonious assault. Defendant now appeals as of right, arguing that the trial court erred in its instruction regarding the element of intent in its jury charge on the crime of assault with intent to murder, that he was denied a fair trial because the prosecutor improperly questioned a defense witness about defendant's mental condition, that he was denied a fair trial because the prosecutor improperly questioned him about past specific instances of conduct toward his wife and children and because the prosecutor called his ex-wife to testify as a rebuttal witness in order to substantiate certain alleged prior bad acts, and that he is entitled to a resentencing because the sentencing judge, who presided in defendant's earlier divorce case, improperly considered information obtained during the divorce case. We affirm.

The record reveals that defendant and Joyce were married for twelve years, during which time they had two children. They separated in June, 1983, and were divorced on March 20, 1984. Joyce married Albert "Roy" Peterson on April 4, 1984.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

On March 23, 1984, Peterson drove from his home in New Orleans, Louisiana, to visit Joyce in Sturgis, Michigan. Joyce lived in the same home in which she and defendant had resided during their marriage. Peterson arrived at approximately 8:00 P.M., and the couple went to bed around 1:00 or 2:00 A.M. Sometime thereafter, they were awakened by defendant, who was stabbing at them with a knife. Joyce managed to escape after a brief struggle and ran downstairs to telephone the police. However, since the telephone cord had been pulled from its connection in the wall, the telephone was inoperative. Joyce ran to a neighbor's house, where she telephoned the police.

Meanwhile, Peterson attempted to elude defendant's knife attack. Eventually, he managed to wrestle the knife away from defendant, who then began to strike out at Peterson with a long object. Finally, defendant ceased his attack and fled from the home. Peterson had suffered an eye injury, a broken finger, a bite wound, and multiple knife wounds to the head, arms, and legs. Four of the stab injuries were serious, consisting of two to an eye and two that penetrated the outer table of the skull. Joyce also suffered cuts on her head.

Defendant testified in his own behalf at trial. First, he explained the efforts he had made to save his marriage to Joyce and the frustration and distress he had experienced pending his divorce. He then testified regarding the events leading up to and concerning the March 24, 1984, attack. According to defendant, on March 23, 1984, at approximately 5:00 P.M., he picked up his children for his scheduled weekly visitation and drove to a Holiday Inn in Elkhart, Indiana. After putting the children to bed, he watched television and drank some alcohol. Pondering his divorce situation, he became increasingly perturbed. Earlier, he had

learned that Peterson was visiting Joyce that weekend and, in fact, was delivering a new car to her. Defendant assumed that Joyce was paying for the car in part with some of the child support money he had been paying to her. This thought made defendant even more angry, prompting him to leave his children by themselves at the motel and return to Joyce's home in Sturgis.

When defendant arrived at Joyce's home in Sturgis, he noticed a new car parked in the driveway. He watched Joyce and Peterson through a window for a short time and then went to his own home, also located in Sturgis, where he had a few more drinks of alcohol. His frustration mounted as he thought about the possibility that his children could be removed from the state if Joyce and Peterson were to marry. In his anger, he decided to damage the new car at Joyce's house. Thus, he packed a hammer to break the car's windows and lights, a knife to slash the car's upholstery, and a flashlight into a bag and set out for Joyce's house. Upon arriving, he found the car doors locked. For reasons he could not explain, defendant did not damage the vehicle, but instead entered the home through an open window. Inside, he found a bottle of liquor and took two or three swallows directly from the bottle. After pulling the telephone wire out of its wall connection, he slowly walked upstairs, taking his hammer, knife and flashlight with him.

Defendant testified that he could not remember his feelings or thoughts as he entered the bedroom where Joyce and Peterson were sleeping; he felt only a numbness as he stood by the bed. The actual attack was very hazy in his memory and he could recall only bits and pieces of it, although he remembered striking both Joyce and Peterson with either the flashlight or hammer. He did not

recall having used his knife until he and Peterson were fighting on the floor. He insisted that he did not intend to harm or kill anyone.

The defense theory of the case was that defendant had been temporarily insane at the time of the attack. In support of that theory, defense witness Dr. Leonard J. Donk, a licensed psychologist who had conducted extensive tests of, and interviews with, defendant, testified that defendant had recently experienced a great deal of stress and had suffered from a mood disorder which manifested itself by odd behavior (e.g., by spying on Joyce, taking her clothing, and making confrontational telephone calls and notes). Dr. Donk hypothesized that defendant's mood disorder worsened as he became aware of Peterson's presence with his ex-wife and that on the night in question he probably suffered an acute schizophrenic episode (i.e., temporary insanity) after observing the couple together in bed in what had been his marital home. On cross-examination, the prosecutor questioned Dr. Donk extensively regarding defendant's negative personality traits and alleged criminal insanity.

After the defense had rested, the prosecution presented several rebuttal witnesses. Two of the witnesses, Dr. Newton Jackson, a clinical and forensic psychologist, and Dr. William Decker, a psychiatrist, opined that, while defendant has a paranoid personality disorder and may have experienced a severe emotional disturbance, he was not temporarily insane at the time of the attack. Moreover, Joyce was recalled to testify regarding the circumstances which had prompted her to file for a divorce from defendant, such circumstances including defendant's possessive personality as well as his physical abuse and harassment of her.

Defendant first contends on appeal that the trial

court erred in its instruction to the jury regarding the element of intent in its charge on the crime of assault with intent to murder. At the trial level, defense counsel not only failed to object to the court's instructions to the jury, but also stated that he was "very satisfied with the charge." Generally, a party may not assign as error a trial court's failure to give an instruction unless that party objected on the record before the jury retired to consider the verdict. MCR 2.516(C). Absent such an objection, this Court will not review the alleged error except to prevent a miscarriage of justice. *People v Vicuna,* 141 Mich App 486, 492; 367 NW2d 887 (1985); MCL 769.26; MSA 28.1096. The purpose of this rule is to prevent the giving of an improper instruction or to facilitate the correction of an erroneous instruction before a verdict is rendered, thereby avoiding a costly new trial. *Moskalik v Dunn,* 392 Mich 583, 592; 221 NW2d 313 (1974). Counsel may not sit back and harbor error, to be used as an appellate parachute in the event of an unfavorable jury verdict. *People v Bragdon,* 142 Mich App 197, 201; 369 NW2d 208 (1985). We are convinced that defendant in this case suffered no manifest injustice as a result of the trial court's instructions to the jury and that, to the contrary, the jury was properly instructed on the controlling law.

The offense of assault with intent to murder is, without question, a specific intent crime. It must be shown that the defendant intended to kill the victim under circumstances that did not justify, excuse, or mitigate the crime. *People v Guy Taylor,* 422 Mich 554, 567-568; 375 NW2d 1 (1985). Thus, it is not enough that the defendant acted only with an intent to cause serious bodily injury or with a conscious disregard of the risk of death. *Id.,* p 567; *People v Cochran,* 155 Mich App 191,

193-194; 399 NW2d 44 (1986). Because the offense is a specific intent crime, a defendant cannot be found guilty of it if conditions were such as to preclude the forming of the necessary intent. Conditions which are recognized as defenses to the crime include intoxication, insanity and diminished capacity. *People v Jones,* 228 Mich 426, 428-429; 200 NW 158 (1924); *People v Mangiapane,* 85 Mich App 379, 395; 271 NW2d 240 (1978). Moreover, if a defendant would have been guilty of manslaughter had the assault resulted in death (due to an absence of malice), there can be no conviction of assault with intent to murder. *People v Mortimer,* 48 Mich 37, 40; 11 NW 776 (1882); *People v Maher,* 10 Mich 212, 218-219 (1862); CJI 17:2:02(1).

In the instant case, the trial court's instructions to the jury were not flawed. The jury was instructed on the elements of the offense of assault with intent to murder, CJI 17:2:01, and was informed that defendant could not be guilty of the offense if the charge would have been reduced to manslaughter had the victim died as a result of the incident, CJI 17:2:02(1). The elements of the crime of voluntary manslaughter were also enunciated to the jury. In addition, the jury was instructed that defendant must have had the specific intent to kill the victim, CJI 3:1:16, and that insanity, if proven, could negate that intent, CJI 7:8:01.

Contrary to what defendant asserts on appeal, the jury was not erroneously instructed that defendant need not have had the personal intent to kill in order to be guilty of assault with intent to murder. Defendant has read the jury instructions out of context and challenges the entire charge by making reference to isolated statements. However, it is well established that jury instructions must be

read as a whole and not extracted piecemeal in an effort to establish error mandating reversal. *People v Wesley*, 148 Mich App 758, 761; 384 NW2d 783 (1985), lv gtd on other grounds 425 Mich 872 (1986). Here, the jury was expressly instructed on several different occasions that defendant could not be found guilty if he did not have the requisite specific intent. It was further instructed that a finding of the required specific intent could not be reached if defendant made a successful showing of insanity or of the lack of actual malice. In accordance with case law and the language of the Michigan Criminal Jury Instructions, the trial court appropriately stated that the lack of actual malice could arise if defendant acted out of passion or provocation, as measured by the "ordinary person" standard. CJI 16:4:02. Indeed, the jury was even told that it could consider any peculiar weakness of mind or infirmity of temper of defendant himself.

Accordingly, we conclude that, far from causing any manifest injustice, the instructions given to the jury by the trial court accurately summarized the applicable law.

Second, defendant argues that he was denied a fair trial because the prosecutor questioned a defense witness about defendant's negative personality traits, current mental condition and capacity for further violence. Our perusal of the transcript discloses that during the cross-examination of Dr. Leonard J. Donk, a licensed psychologist, the prosecutor posed questions regarding, among other things, defendant's propensity for being manipulative, possessive, jealous, exploitive, hostile, cruel and vindictive, as well as regarding defendant's current mental condition and his inclination or proneness to commit further acts of violence. No objections were raised concerning these questions.

As stated above, appellate review is foreclosed when an issue is raised for the first time on appeal unless it appears that a failure to consider the issue would result in a miscarriage of justice. *Vicuna, supra; People v Juarez,* 158 Mich App 66, 71; 404 NW2d 222 (1987); MCL 769.26; MSA 28.1096.

Initially, we note that the prosecutor's questions regarding defendant's negative personality traits constituted proper advocacy in that they concerned testimony previously given by Dr. Donk during direct examination. In response to inquiries regarding the results of various psychological tests administered to defendant, Dr. Donk stated that defendant was manipulative, possessive, jealous, exploitive, hostile, cruel and vindictive. Each of the prosecutor's questions, however, concerned information that defense counsel had earlier elicited from Dr. Donk. Defendant cannot now be heard to complain regarding questions asked by the prosecutor on cross-examination when he himself "opened the door" concerning such evidence in an effort to support his defense of insanity. See *City of Troy v McMaster,* 154 Mich App 564, 570-571; 398 NW2d 469 (1986).

Moreover, the questions posed by the prosecutor concerning defendant's personality traits, as well as those regarding his present mental condition and capacity for violence, were material to the issue of defendant's insanity. As observed in 2 Wigmore, Evidence (Chadbourn Rev), § 228, p 9:

Sanity and insanity are terms applicable to the mode of operation of the mind as judged by some accepted standard of normality. The mode of operation of the mind is ascertainable from the conduct of the person in question, *i.e.,* from the effect produced by his surroundings on his mind when responding by action to those surroundings. Virtu-

ally, then, the mind is one, while the surroundings are multifold; and the mode of operation cannot be ascertained to be normal or abnormal except by watching the effects through a multifold of causes. On the one hand, no single act can be of itself decisive; while, on the other hand, any act whatever may be significant to some extent.

The first and fundamental rule, then, will be that *any and all conduct* of the person is admissible in evidence. There is no restriction as to the kind of conduct. There can be none; for if a specific act does not indicate insanity it may indicate sanity. It will certainly throw light one way or the other upon the issue.

As this Court has previously remarked, Michigan decisions are in accord with the rule that any and all conduct of an accused is admissible as evidence where the defense of insanity has been raised. *People v Cramer,* 97 Mich App 148, 161; 293 NW2d 744 (1980), lv den 411 Mich 862 (1981). As stated in *People v Woody,* 380 Mich 332, 338; 157 NW2d 201 (1968), and quoted by this Court in *Cramer, supra,* p 161:

Testimony of prior arrests, convictions, assaultive and antisocial conduct, ordinarily completely inadmissible as bearing on the general guilt or innocence of [an] accused of the offense charged, [becomes] material and admissible as bearing on the issue of his insanity.

Accordingly, we conclude that, far from causing any miscarriage of justice, the questions posed by the prosecutor to Dr. Donk regarding defendant's negative personality traits, current mental condition and capacity for further violence were proper.

Third, defendant contends that he was denied a fair trial because the prosecutor improperly questioned him about past specific instances of conduct

or alleged bad acts toward his wife and children and because the prosecutor called defendant's ex-wife to testify as a rebuttal witness in order to substantiate certain alleged prior bad acts. Specifically, the acts about which the prosecutor questioned defendant included his harassing of, and spying on, Joyce, his stealing of Joyce's letters for use against her, his refusing to move out of the marital home and thereby forcing Joyce and the children to live in poor conditions, his taking of Joyce's personal belongings, his making harassing telephone calls to Joyce, his leaving the children unattended and not properly caring for them, his using the children to harm Joyce during the divorce proceedings, and his physical abuse of Joyce.

As with the two previous issues raised by defendant on appeal, defense counsel made no objections at trial to the prosecution's questioning of either defendant or Joyce regarding defendant's past bad acts. Thus, the issue was not preserved for appellate review and should not be reviewed absent a miscarriage of justice. *Vicuna, supra; Juarez, supra; People v Norwood,* 123 Mich App 287, 297; 333 NW2d 255 (1983), lv den 417 Mich 1006 (1983); MCL 769.26; MSA 28.1096. Many of the questions posed to defendant by the prosecutor were merely inquiries following up on testimony elicited from defendant himself or from Dr. Donk on direct examination. *City of Troy v McMaster, supra.* Moreover, the alleged prior bad acts were proper subjects of inquiry since they were material to the issue of defendant's insanity. *Cramer, supra.*

Thus, for the same reasons as those set forth in the portion of this opinion addressing the second issue raised on appeal, we find that, far from causing any miscarriage of justice, the questions posed by the prosecutor to defendant and Joyce

regarding defendant's alleged prior bad acts were proper.

Fourth, defendant contends that he is entitled to a resentencing because the court improperly considered information earlier obtained during his divorce case. The same trial judge who presided in defendant's divorce case also presided in the criminal action. As with all the other issues raised by defendant on appeal, however, this issue was not the subject of an objection at the trial level. Nor did defendant file a motion below to vacate his sentence prior to bringing the instant appeal. Nor did defendant demonstrate any specific prejudice. Under these cirumstances, defendant has waived any right to complain on appeal regarding this issue. *People v Gauntlett,* 152 Mich App 397, 403; 394 NW2d 437 (1986), lv den 426 Mich 873 (1986).

Affirmed.