# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

v

AMBER LYNN WILSON,

   Defendant-Appellant.

UNPUBLISHED
July 28, 2015

No. 321184
Kent Circuit Court
LC No. 13-007301-FC

Before: MARKEY, P.J., and MURPHY and STEPHENS, JJ.

PER CURIAM.

Following a jury trial, defendant Amber Wilson was convicted of two counts of assault with intent to commit murder, MCL 750.83. The trial court sentenced defendant to concurrent terms of 15 to 45 years' imprisonment. Defendant appeals as of right. We affirm.

Defendant assaulted her mother with an ax and assaulted her stepfather with the same ax, as well as a knife, after her parents had gone to bed in the home shared by all three of them.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant argues that her convictions must be reversed because there was insufficient evidence for the jury to find that she had an intent to kill. Defendant contends that the prosecution failed to credibly establish an intent to kill, given the lack of true life-threatening injuries when considered in conjunction with the evidence that the victims were older than defendant, that defendant was in better physical condition than the victims, and that the victims had just awoken moments before the attack, making it difficult for them to defend themselves. The gist of defendant's argument is that her parents would have been dead or would have suffered more serious injuries if defendant actually had the intent to kill them.

We review de novo the issue regarding whether there was sufficient evidence to sustain a conviction. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In reviewing the sufficiency of the evidence, this Court must view the evidence – whether direct or circumstantial – in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). A jury, and not an appellate court, observes the witnesses and listens to their

-1-

testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Assault with intent to commit murder is a specific intent crime. *People v Lipps*, 167 Mich App 99, 105; 421 NW2d 586 (1988). "The elements of assault with intent to commit murder are: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005) (citations and quotation marks omitted). With respect to the intent to kill, it is well settled that such intent may be inferred from any facts in evidence. *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient to establish a defendant's intent to kill." *Id.* The intent to kill may be gleaned from the nature of the defendant's acts that constituted the assault, the temper or disposition of mind with which the acts were apparently performed, whether the means used would naturally produce death, e.g., use of a dangerous weapon, any declarations by the defendant, and all other circumstances calculated to throw light upon the intention with which the assault was made. *Brown*, 267 Mich App at 149 n 5; *People v DeLisle*, 202 Mich App 658, 672; 509 NW2d 885 (1993).

Defendant's parents testified that, after they saw defendant in the doorway to their bedroom, defendant said, "You're going to die." This was a clear declaration of defendant's intent to kill. According to her stepfather, defendant then raised an object, which he soon learned was an ax, over her head and swung it at his wife. Although the ax hit defendant's mother in the shoulder, defendant's stepfather testified that defendant appeared to be aiming the ax at his wife's head. He further testified that defendant raised the ax a second time. Defendant's stepfather grabbed the ax before defendant could swing it again and then, as he struggled with defendant, defendant repeatedly said that she was going to kill him.[1] After her stepfather wrested the ax from defendant, defendant pulled out a knife that had a 3-1/2-inch blade. Defendant proceeded to stab her stepfather in the chest. There was medical testimony that defendant's mother's clavicle and humerus were broken and that the broken bones were caused by a "fair amount" of blunt force. There was also medical testimony that the wound to the stepfather's chest was approximately 1-1/2 inches deep. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable

---

[1] While defendant repeatedly complains about the "circumstantial" nature of the proofs regarding the intent to kill, she ignores the direct evidence of her state of mind reflected in her statements to the victims during the assaults.

doubt that defendant assaulted her parents with the actual intent to kill them. Defendant's convictions are supported by sufficient evidence.

## II. INSTRUCTION AND EVIDENCE REGARDING MENTAL ILLNESS

Defendant next argues that the trial court erred when it instructed the jury that it could not consider any mental illness that may have affected defendant in determining her intent or guilt. According to defendant, the instruction was erroneous because the jury should have been allowed to consider evidence regarding whether defendant suffered from a mental illness. "A party must object [to] or request a given jury instruction to preserve the error for review." *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). Defendant objected to the instruction, but she objected on the ground that the instruction was unnecessary because the parties did not address mental illness during trial. Because defendant's claim of error on appeal is different than the objection defendant asserted before the trial court, the instructional claim of error is unpreserved. *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993). We review unpreserved claims of instructional error for plain error affecting the defendant's substantial rights. *People v Aldrich*, 246 Mich App 101, 124-125; 631 NW2d 67 (2001).

Since 1975, the insanity defense has been governed by statute. *People v Carpenter*, 464 Mich 223, 230; 627 NW2d 276 (2001), citing 1975 PA 180. In *Carpenter*, the Supreme Court held that the Legislature created "an all or nothing insanity defense" and that "evidence of mental incapacity short of insanity cannot be used to avoid or reduce criminal responsibility by negating specific intent." *Id.* at 237. Defendant did not present an insanity defense.[2] Therefore, pursuant to *Carpenter*, the trial court's instruction that the jury could not consider mental illness in determining defendant's intent or guilt was an accurate statement of the law.

Defendant presents three arguments regarding why, even in light of *Carpenter*, the trial court's instruction was erroneous. First, defendant claims that evidence of mental illness can be used in determining a defendant's intent, even if the evidence cannot provide a complete defense

---

[2] There are several requirements that must be satisfied before an insanity defense may be raised. *Carpenter*, 464 Mich at 231. One of the requirements is that the defendant fully cooperate in an "examination by personnel of the center for forensic psychiatry or by other qualified personnel . . . ." MCL 768.20a(4); see *People v Toma*, 462 Mich 281, 292 n 6; 613 NW2d 694 (2000). Defendant was precluded "from presenting testimony relating to . . . her insanity at the trial," because she did not cooperate in an examination. MCL 768.20a(4). A forensic examiner who interacted with defendant stated that he had no good reason to believe that a mental illness had led to defendant's refusal to participate in an examination. Following a colloquy between the trial court and defendant at a hearing in which defendant indicated that she did not wish to pursue an insanity defense, the court expressed that defendant had responded to questions in a "completely appropriate" manner, that she understood all aspects of the process, and that there was "no evidence to suggest either insanity, mental illness, . . . or any mental health related issues which would encumber [defendant's] ability to go forward to trial."

to the crime. *Carpenter* provides no support for this proposition. Indeed, *Carpenter* explicitly rejected the continuing viability of a "diminished capacity" defense. *Id.* at 235-236.[3] Second, defendant argues that *Carpenter* was wrongly decided because the Supreme Court misinterpreted the Legislature's intent and because the Supreme Court failed to recognize differences between an insanity defense and a diminished capacity defense. We do not address the merits of this argument. Because *Carpenter* has not been overruled or modified, we are bound to follow it. *People v Tierney*, 266 Mich App 687, 713; 703 NW2d 204 (2005). Third, defendant argues that a statutory scheme which prohibits a defendant who is not legally insane from presenting evidence that she did not have the required intent to commit the charged crime is unconstitutional. However, relying on a decision from the United States Supreme Court, our Supreme Court in *Carpenter*, 464 Mich at 240-241, held that such a statutory scheme was constitutionally permissible. Because defendant did not present an insanity defense and was, therefore, prohibited from using evidence of mental illness to avoid or reduce her criminal responsibility by negating specific intent, *id.* at 237, the trial court's instruction was not erroneous, much less plainly erroneous, *Aldrich*, 246 Mich App at 124-125.

Additionally, defendant argues that the trial court erred when it refused to ask the questions submitted by jurors concerning whether defendant had a mental illness. However, defense counsel agreed that the questions should not be asked. A "[d]efendant may not assign error on appeal to something that his own counsel deemed proper at trial." *People v Barclay*, 208 Mich App 670, 673; 528 NW2d 842 (1995). Because defense counsel deemed it proper that the questions not be asked, defendant cannot now argue on appeal that the trial court erred when it failed to ask the questions. Moreover, given the state of the law under *Carpenter*, the questions would have been irrelevant and thus improper.

III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next claims that she was denied the effective assistance of counsel. Because defendant did not move the trial court for a new trial or an evidentiary hearing, her claims of ineffective assistance of counsel are unpreserved. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Our review of unpreserved claims of ineffective assistance of counsel is limited to mistakes apparent on the record. *People v Cox*, 268 Mich App 440, 453; 709 NW2d 152 (2005). To establish a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below objective standards of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceedings would have been different. *People v Uphaus (On Remand)*, 278 Mich App 174, 185; 748 NW2d 899 (2008).

Defendant claims that defense counsel was ineffective for failing to assert an insanity defense or a diminished capacity defense. The argument is without merit. Defendant did not

---

[3] A "diminished capacity" defense had allowed "a defendant, even though legally sane, to offer evidence of some mental abnormality to negate the specific intent required to commit a particular crime." *Carpenter*, 464 Mich at 232.

cooperate in the court-ordered examination and, therefore, was precluded from presenting an insanity defense. MCL 768.20a(4). Defense counsel cannot be faulted for a matter that was beyond counsel's control. Moreover, once again, a diminished capacity defense is not available in Michigan courts. *Carpenter*, 464 Mich at 235-237; *People v Abraham*, 256 Mich App 265, 271 n 2; 662 NW2d 836 (2003). Defense counsel's performance in failing to assert defenses that were not available to defendant did not fall below objective standards of reasonableness.

Defendant also argues that defense counsel was ineffective for failing to argue that evidence of mental illness showed a lack of intent to commit murder; for agreeing that the trial court's instruction that the jury could not consider evidence of mental illness in determining defendant's intent or guilt was a correct statement of the law; for agreeing that the jurors' questions about whether defendant suffered from a mental illness could not asked; and for telling the jury during closing argument that it could not consider mental illness. Because evidence of mental illness short of insanity could not be used to avoid or reduce defendant's criminal responsibility by negating specific intent, *Carpenter*, 464 Mich at 237, counsel's performance with respect to all of the above claims did not fall below objective standards of reasonableness.

Defendant further argues that defense counsel was ineffective for not arguing jury nullification in closing argument. Jury nullification is the power of the jury to dispense mercy by nullifying the law and returning a verdict less than that required by the evidence. *People v Demers*, 195 Mich App 205, 206; 489 NW2d 173 (1992). Although a jury has the power to disregard the trial court's instructions, it does not have the right to do so. *Id.* at 207. This Court in *Demers* rejected the proposition that "a defendant is entitled to present a defense that does nothing more than present facts that are aimed solely at prompting jury nullification." *Id.* A trial court may exclude testimony concerning jury nullification, given that it is not a defense recognized by the Legislature. *Id.* at 207-208.

Had defense counsel attempted to argue jury nullification during closing argument, the trial court could have soundly halted and precluded the argument. Therefore, counsel's failure to argue jury nullification did not constitute deficient performance, because counsel is not required to take a futile and meritless position. *People v Horn*, 279 Mich App 31, 42 n 5; 755 NW2d 212 (2008). Assuming that jury nullification could have been argued by counsel, there is still no basis for reversal. In closing argument, defense counsel argued that the jury should acquit defendant because the prosecutor failed to prove beyond a reasonable doubt that defendant had the intent to commit murder. Before the parties' closing arguments, the trial court instructed the jury that each crime is made up of elements and that the prosecutor must prove each element of the crime beyond a reasonable doubt. It also instructed the jury on the elements of assault with intent to commit murder, including that defendant had to intend to kill her parents. Defense counsel's decision to assert a defense based on an element of the charged offenses, rather than one that relied on the mercy of the jurors, was a matter of sound trial strategy. Defendant has failed to overcome the strong presumption that counsel's performance in closing argument constituted sound trial strategy. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

IV. DEFENDANT'S STANDARD 4 BRIEF

In a Standard 4 brief, defendant raises challenges to the scoring of offense variables (OVs) 1, 2, 3, 4, 6, 10, and 19. Defendant initially contends that, pursuant to *Alleyne v United States*, __ US __; 133 S Ct 2151; 186 L Ed 2d 314 (2013), her constitutional rights under the Sixth and Fourteenth Amendments to a jury trial and to have the prosecution prove its case beyond a reasonable doubt were violated, given that the trial court engaged in impermissible judicial fact-finding in regard to assessing the scoring variables. In *Alleyne*, the United States Supreme Court held that facts that increase a mandatory minimum sentence must "be submitted to the jury and found beyond a reasonable doubt." *Id.* at 2163. In *People v Herron*, 303 Mich App 392, 405; 845 NW2d 533 (2013), this Court rejected application of *Alleyne* to Michigan's sentencing scheme. In *People v Lockridge*, 304 Mich App 278; 849 NW2d 388 (2014), this Court acknowledged that it was bound by *Herron* and therefore concluded that *Alleyne* did not impact sentencing in Michigan, although two members of the panel voiced disagreement with *Herron*. Our Supreme Court granted leave in *Lockridge*, 496 Mich 852 (2014), and is holding *Herron* in abeyance, 846 NW2d 924 (2014). We reject defendant's argument in light of the fact that we currently remain bound by *Herron* and *Lockridge*. MCR 7.215(J)(1).

Defendant contends that the trial court erred in scoring OVs 3, 4, 6, 10, and 19 because there was no evidence in the record to support the assessed points.[4] We note that the record reflects that the probation department scored the guidelines for each of the two victims or two counts, with the only distinction being a score of 25 points for OV 3 with respect to the assault against defendant's mother, as opposed to the assessment of 10 points for OV 3 in regard to the assault against defendant's stepfather.[5] The trial court, however, solely utilized the higher scored guidelines when sentencing defendant; therefore, those scores will be the focus of our analysis.[6]

Under the sentencing guidelines, the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy,* 494 Mich 430, 438; 835 NW2d 340 (2013); *People v Rhodes (On Remand),* 305 Mich App 85, 88; 849 NW2d 417 (2014). " 'Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred.' " *People v Fawaz,* 299 Mich App 55, 60; 829 NW2d 259 (2012) (citation omitted). A preponderance of the evidence is "such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth." *People v Cross,* 281 Mich App 737, 740; 760 NW2d 314 (2008). We review de novo "[w]hether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute . . . ." *Hardy,* 494 Mich at 438; see also *Rhodes,* 305 Mich App at 88. When calculating the guidelines,

---

[4] Defendant's argument regarding OVs 1 and 2 was limited to the *Alleyne* issue.

[5] Despite the variation, the minimum sentence guidelines range was identical, 135 to 225 months.

[6] Defendant does not argue that the trial court had to score or consider guidelines for each count of assault with intent to commit murder.

a sentencing court may rely on information in the presentence investigation report (PSIR) and testimony taken at trial. *People v Althoff*, 280 Mich App 524, 541; 760 NW2d 764 (2008).

OV 3 provides for the assessment of 25 points if "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c). The victim impact statements contained in the PSIR indicated that defendant's mother, who is right handed, is unable to use her right arm for daily tasks due to being struck by the ax. She suffers continual pain in her arm, neck, and shoulder, as well as stiffness and swelling in her fingers. Defendant's mother does not trust herself to carry a cup of coffee in her right hand for fear of dropping it. She has trouble cutting food unless she uses a serrated knife and cannot scoop ice cream. Defendant's mother stated that she will not be able to hold her new grandchild in her right arm because of the pain. Defendant's stepfather stated that, as caused by the attack and ensuing physical struggle, he does not have "full and proper use of the thumb." In light of the information in the PSIR, we conclude that the trial court did not clearly err in finding that a preponderance of the evidence established that a "permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c).

Defendant next argues that the trial court erred in assessing 10 points for OV 4. OV 4 addresses psychological injury to a victim. MCL 777.34(1). Ten points is to be assessed for OV 4 if "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). Subsection (2) of the statute requires a court to "[s]core 10 points if the serious psychological injury may require professional treatment," with the admonition that "[i]n making this determination, the fact that treatment has not been sought is not conclusive." A trial court may assess 10 points for OV 4 "if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated." *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014). In *People v McChester*, __ Mich App __; __ NW2d __, issued May 5, 2015 (Docket No. 318145), slip op at 3-4, this Court surveyed published opinions affirming 10-point scores for OV 4:

> See *People v Armstrong*, 305 Mich App 230, 247; 851 NW2d 856 (2014) (victim expressed feelings of confusion, emotional turmoil, guilt, an inability to trust others, and anger, and she suffered from emotional difficulties); *People v Earl*, 297 Mich App 104, 109-110; 822 NW2d 271 (2012) (victim impact statement and letter from the victim reflected that the victim suffered from sleeplessness for weeks, relived the robbery every time she closed her eyes, and constantly feared being robbed by customers); *People v Ericksen*, 288 Mich App 192, 203; 793 NW2d 120 (2010) (PSIR indicated that the victim suffered from depression and that his personality changed as a result of poor health following the assault and amputations); *People v Davenport (After Remand)*, 286 Mich App 191, 200; 779 NW2d 257 (2009) (child victim of sexual abuse had undergone two series of counseling sessions to deal with abuse).

In the victim impact statement drafted by defendant's mother, she wrote that she and her husband went to counseling after the attack. According to defendant's mother, for many months she lay awake at night unable to sleep and afraid to close her eyes; she constantly watched the bedroom door. She wakes at the slightest noise. Defendant's stepfather wrote in his victim impact statement that he does not sleep well at night. He wakes at every sound and fears being

attacked. He has nightmares about the attack two or three times a week. Based on the victim impact statements, the trial court did not clearly err in assessing 10 points for OV 4.[7]

Defendant next asserts that OV 6 should have been assessed at 25 points, rather than 50 points. OV 6 addresses the offender's intent to kill or injure another individual. MCL 777.36(1). Fifty points is to be assessed for OV 6 if "[t]he offender had premeditated intent to kill[.]" MCL 777.36(1)(a). " 'To premeditate is to think about beforehand[.]' " *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998) (citation omitted). Premeditation requires a sufficient time to permit the defendant to take a second look and may be inferred from the circumstances. *People v Coy*, 243 Mich App 283, 315; 620 NW2d 888 (2000).

Defendant's mother testified that, after she returned home from work on March 5, 2013, she heard defendant yelling in the basement, including, "I'm going to kill you." Similarly, defendant's stepfather testified that defendant was yelling "about killing and that." Shortly before 10:00 p.m. on that date, defendant bought an ax at a Meijer store. Her parents went to bed after watching the weather report on the 11:00 p.m. news. They again heard defendant yelling in the basement. Sometime after her parents fell asleep, defendant appeared in their bedroom with the newly purchased ax and a knife. She indicated that she was going to kill them. Based on this evidence, we are not left with a definite and firm conviction that the trial court made a mistake in finding that there was evidence of a premeditated intent to kill.

A trial court must score OV 6 "consistent with a jury verdict unless the [court] has information that was not presented to the jury." MCL 777.36(2)(a). Although premeditation is not an element of assault with intent to commit murder, see *Brown*, 267 Mich App at 147-148, the 50-point score for OV 6 was consistent with the jury's verdict. The jury decided that defendant had an intent to kill; it simply did not need to reach the issue whether the intent was premeditated. We affirm the 50-point score for OV 6.

Defendant next argues that the trial court erred in scoring five points for OV 10. OV 10, which addresses exploitation of a vulnerable victim, is to be assessed at five points if "[t]he offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, *asleep*, or unconscious." MCL 777.40(1)(c) (emphasis added). Defendant went to the bedroom of her parents while they were

---

[7] We find no merit to defendant's argument that the rule of lenity requires that OV 4 be assessed at zero points. "The 'rule of lenity' provides that courts should mitigate punishment when the punishment in a criminal statute is unclear." *People v Denio*, 454 Mich 691, 699; 564 NW2d 13 (1997). The rule only applies when the statute's language is ambiguous or in the absence of any firm indication of legislative intent. *Id.* at 700 n 12. A statute is ambiguous only when it irreconcilably conflicts with another provision or is equally susceptible to more than a single meaning. *Fluor Enterprises, Inc v Dep't of Treasury*, 477 Mich 170, 177-178 n 3; 730 NW2d 722 (2007). The language of OV 4 is not ambiguous.

sleeping and unable to protect themselves. Although they were awake during the actual attack, they awoke only after defendant, who had an ax and a knife, was standing near the bedroom doorway and ready to attack. These facts support a finding that defendant's parents were vulnerable and that defendant exploited their vulnerability for unethical purposes. MCL 777.40(3)(b). The trial court did not clearly err in assessing five points for OV 10.

Finally, defendant asserts that the trial court erred in assessing 10 points for OV 19, which addresses, in part, interference with the administration of justice. MCL 777.49. We need not decide this issue because even if OV 19 should have been assessed at zero points, it would not alter the minimum sentence guidelines range. "Where a scoring error does not alter the appropriate guidelines range, resentencing is not required." *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006). The reduction of 10 points in defendant's total OV score with respect to the applicable class A sentencing grid would still leave defendant at OV level VI, which is her current level. MCL 777.62 (OV level VI is 100+ points, and defendant had a total OV score of 130 points). Accordingly, resentencing is not warranted even were OV 19 scored incorrectly.[8]

Affirmed.

/s/ Jane E. Markey
/s/ William B. Murphy
/s/ Cynthia Diane Stephens

---

[8] Indeed, even if we additionally erred in earlier affirming the 10-point score for OV 4 and the 5-point score for OV 10, defendant would still be at OV level VI.