# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
January 19, 2017

v

ADRAIN TAYLOR WAYNE,

Defendant-Appellant.

No. 329678
Muskegon Circuit Court
LC No. 15-066296-FC

Before: MURPHY, P.J., and METER and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant was convicted by a jury of assault with intent to commit murder (AWIM), MCL 750.83, felon in possession of a firearm (felon-in-possession), MCL 750.224f, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to 25 to 50 years' imprisonment for the AWIM conviction, one to five years' imprisonment for the felon-in-possession conviction, and to two years' imprisonment for each of the felony-firearm convictions. Defendant appeals as of right, and we affirm.

This case arises out of a shooting that occurred in Muskegon. There was evidence that the victim and defendant had an altercation about 40 to 50 days before the shooting, where the victim hit defendant and "knocked him out." The victim testified that he has known defendant since childhood and that they grew up in the same neighborhood. On the day of the shooting, the victim was walking to his grandmother's residence when he saw defendant approach in his white Chevrolet S-10 pickup truck. Defendant stopped, exited his vehicle, and began running toward the victim in a crouched position. The victim thought that defendant wanted to engage in a physical fight in revenge for the earlier incident. The victim headed in defendant's direction prepared to fight, but he then heard a gunshot and started running away from defendant. In his attempt to retreat from defendant, who was now chasing the victim, the victim tried to get behind a telephone pole, tripped on a curb, did a somersault, bounced back up, and kicked at defendant. Around the time of the tumble, defendant heard a second gunshot. While the victim testified that the sound of the gunshots seemed close in proximity to the victim, about two to three feet away, he never actually saw a firearm in defendant's possession. The victim, who feared he had been shot, was not struck by any bullets. According to the victim, after the second shot, defendant went back to his truck and drove away. The victim entered the nearby residence of his uncle, who had heard two "pop[s]." The uncle testified that the victim stated, "I just got shot at."

A neighbor who lived across the street from the scene of the shooting identified defendant as the shooter from a photograph of defendant. The neighbor watched the whole

-1-

shooting episode transpire while sitting outside on the curb. He testified that defendant, after arriving in a pickup truck and exiting the vehicle, ran behind the victim, held a gun out, pointed it, and "fired two shots," with the victim falling "on the second shot," leaving the neighbor to believe that the victim had been shot. According to the neighbor, defendant returned to his truck after the victim went to the ground. Later, the neighbor was specifically asked whether the shots were fired toward the victim, and the neighbor replied, "Yes."

On appeal, defendant first argues that there was insufficient evidence to show that he had the intent to kill relative to the AWIM offense. Defendant contends, therefore, that the AWIM conviction must be vacated, as well as the one felony-firearm conviction for which AWIM was the predicate felony. AWIM is a specific intent crime. *People v Lipps*, 167 Mich App 99, 105; 421 NW2d 586 (1988). "The elements of assault with intent to commit murder are: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005) (citations and quotation marks omitted). With respect to the intent to kill, it is well settled that such intent may be inferred from any facts in evidence. *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient to establish a defendant's intent to kill." *Id.* In general, the intent to kill may be gleaned from the nature of the acts that constituted the assault, the temper or disposition of mind with which the acts were apparently performed, whether the means used would naturally produce death, use of a dangerous weapon, any declarations by the defendant, and all other circumstances calculated to throw light upon the intention with which an assault was made. *Brown*, 267 Mich App at 149 n 5; *People v DeLisle*, 202 Mich App 658, 672; 509 NW2d 885 (1993).

Here, there was evidence that defendant, who had previously been assaulted by the victim, wielded a firearm, which constitutes a dangerous weapon, and that defendant discharged the gun twice in the direction of the victim, which is an act that would have a natural tendency to produce death, with defendant fleeing after the victim went down, giving rise to a reasonable inference that defendant thought that he had hit the victim, as was the neighbor's belief. Viewing the direct and circumstantial evidence in a light most favorable to the prosecution, *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002), taking into consideration all reasonable inferences arising from the evidence, *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999), resolving all conflicts in the evidence in favor of the prosecution, *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008), and deferring to the jury's assessment of the weight of the evidence and the credibility of the witnesses, *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), a rational juror could have found that defendant intended to kill the victim. Accordingly, there was sufficient evidence to support the AWIM conviction, as well as the associated felony-firearm conviction.

Next, defendant argues that he was denied due process and a fair trial by the impermissibly suggestive pretrial identification procedure relative to the neighbor's identification of defendant as the shooter, i.e., a single photograph of defendant that was first shown to the victim, which in turn tainted the neighbor's identification of defendant at trial. There is no basis to find plain error affecting defendant's substantial rights with respect to this unpreserved issue. *Carines*, 460 Mich at 763-764. At trial, defendant never really disputed that he was at the scene of the crime and that an incident occurred between defendant and the victim. Instead, defendant, as he does on appeal, claimed a lack of evidence showing an intent to kill, highlighting that defendant never saw a gun and arguing that the neighbor was not that close and

was distracted by children who were present. Defendant grew up in the victim's neighborhood and the two men were well acquainted; there was no evidence suggesting that defendant may have been elsewhere. Even if the neighbor could not have specifically identified defendant and assuming an impermissibly suggestive identification procedure, the neighbor would not have been prevented from testifying to his observance of a person arriving in a truck and shooting twice at the victim, which evidence, when contemplated in conjunction with the victim's testimony, would have pointed to defendant as the shooter. And the neighbor accurately described defendant's vehicle. The requisite prejudice simply cannot be established.[1] Moreover, considering the neighbor's more-than-adequate opportunity to observe the shooter during the offense and the short period of time between the offense and the photo identification, there was a sufficient independent basis for the neighbor's in-court identification of defendant. *People v Gray*, 457 Mich 107, 115-116; 577 NW2d 92 (1998). Reversal is unwarranted.

Next, defendant argues that his rights to due process and a fair trial were violated because the trial court improperly admitted, under the excited utterance exception to hearsay, MRE 803(2), the victim's statement to his uncle that he had "just [been] shot at." The uncle did testify that the victim had calmed down by the time that the statement was made. Nevertheless, assuming error, it was entirely harmless. MCL 769.26; *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999). Between the victim and neighbor's testimony, it was shown that defendant had shot at the victim, and the statement by the victim to his uncle added little and was inconsequential.

Finally, defendant asserts that he was denied the effective assistance of counsel because his trial counsel failed to remove two venirepersons who were acquainted with the victim's uncle. Defendant concedes that one of those venirepersons was excused by the prosecutor, but the other one was allowed to serve on the jury. That juror, however, specifically stated that she did not know and had never spoken to the victim's uncle. Rather, she simply disclosed that the victim's uncle had a child with a girl that she had gone to high school with years earlier, while expressing that the connection would not affect her role as an impartial juror. On this record, there is no basis to find deficient performance or prejudice. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001); see also *Unger*, 278 Mich App at 258 ("this Court has been disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror").

Affirmed.

/s/ William B. Murphy
/s/ Patrick M. Meter
/s/ Amy Ronayne Krause

---

[1] For this same reason, we reject defendant's associated argument that defense counsel was ineffective for failing to challenge the neighbor's pretrial identification of defendant. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001) (to show ineffective assistance of counsel, a defendant must demonstrate deficient performance and prejudice).