*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

V

IVORY TRAYLOR III,

      Defendant-Appellant.

UNPUBLISHED
January 14, 2020

No. 346237
Wayne Circuit Court
LC No. 18-002279-01-FC

Before: K. F. KELLY, P.J., and BORRELLO and SERVITTO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions for assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, carrying a concealed weapon, MCL 750.227, felon in possession of a firearm (felon-in-possession), MCL 750.224f, two counts of assaulting, resisting, or obstructing a police officer, MCL 750.479, and four counts of possession of a firearm during the commission of a felony (felony-firearm) (second offense), MCL 750.227b. Defendant was sentenced to prison, as a second-offense habitual offender, MCL 769.10, for 7 to 15 years for AWIGBH, 2½ to 7½ years for carrying a concealed weapon and felon-in-possession, one to three years for each assaulting, resisting, or obstructing a police officer conviction, and five years for each felony-firearm conviction. We affirm.

## I. FACTS

In February 2017, defendant began acting "strange." Defendant's family tried to get him help for his strange behavior. In March 2017, defendant's parents took him to family counseling. Although defendant seemed to be progressing, he stopped attending counseling after five sessions. On multiple occasions, defendant's family petitioned for him to be hospitalized.

On May 17, 2017, Detroit Police Officers William Eubanks and John Deforest went to the Regency Hotel on Jefferson Avenue in Detroit, Michigan to assist the primary unit with a "possible mental person" causing a disturbance. The police dispatcher advised that defendant was saying that all he had was his life and his gun, he was refusing to leave the hotel, and he was acting very aggressive. When Officers Eubanks and Deforest arrived on scene, defendant was speaking with other police officers at the front of the hotel. After a while, Officer Eubanks

-1-

noticed that defendant became agitated. Officer Deforest noticed that defendant was very erratic and aggressive. Defendant walked away from the police officers saying, "I can't do this. I can't do this."

At some point, it was determined that there would be a petition to hospitalize defendant. Officers Eubanks and Deforest attempted to detain defendant and take him to the hospital. Defendant ran away from Officer Eubanks. Officers Eubanks and Deforest followed defendant, who was running down Jefferson, in their vehicle. Officer Deforest exited the vehicle and chased defendant on foot. Defendant then pulled out a weapon and fired in Officer Deforest's direction. Officer Eubanks exited the vehicle and returned fire. Defendant shot at Officer Deforest nine times, but he was not hit. However, some shots hit an occupied vehicle near Officer Deforest. The officers fired back, and defendant was wounded. A gun was recovered near defendant, and he was arrested and taken to the hospital. At the hospital, defendant tested positive for marijuana and opiates.

At trial, three experts testified regarding defendant's mental state at the time of the incident: Dr. Nicole Huby and Dr. Steven Miller for the prosecution, and Dr. Gerald Shiener for the defense. Dr. Huby concluded that defendant was not legally insane or suffering from a mental illness at the time of the hotel shooting. She further noted that any psychosis that arose due to voluntary substance abuse did not constitute legal insanity. During her interview with defendant, he disclosed that he took Vicodin two to four times a day that he obtained "off the streets" instead of through a legal prescription and smoked marijuana. Dr. Huby opined that defendant engaged in demanding, manipulative behavior. For example, after treatment at the hospital for his gunshot wound, defendant was released to the Wayne County Jail. However, he lied about being suicidal to get away from the deputies and acquire more favorable housing. Additionally, his recollection of facts was self-protective and placed him in a more favorable light. That is, he denied pointing or firing his gun at the police, but asserted that he merely discharged it in the air. Thus, he engaged in a thought process that considered cause and effect. Dr. Huby was aware of the parents' reports of paranoia and strange behavior, but she focused on outcomes, not the family petitions. She noted that defendant may have been taken to the hospital, but the records reflected that he was calm and alert and did not display aggression.

Dr. Miller was requested by the defense to perform an independent evaluation of defendant. He agreed that defendant did not meet the criteria for legal insanity, but diagnosed him as suffering from post-traumatic stress disorder as a result of witnessing the murder of a sibling. Dr. Miller also concluded that defendant was not a reliable narrator of what transpired, but selectively provided information that would be favorable to him. Finally, the doctor noted that the family report of defendant's strange behavior was consistent with his presentation to hospital personnel.

On the contrary, Dr. Shiener concluded that defendant suffered from schizoaffective disorder, bipolar type. Citing the report of defendant's parents regarding the strange behavior and defendant's treatment with antipsychotic medication, he concluded that defendant's illness satisfied the definition of insanity. Dr. Shiener opined that the healthcare system failed defendant. Nonetheless, the jury convicted defendant as charged except the conviction for AWIGBH which was the lesser offense for the charged crime of assault with intent to commit murder. From this verdict, defendant appeals.

## II. JURY INSTRUCTIONS

Defendant argues that he was denied his right to present a defense by the trial court's refusal to instruct on M Crim JI 7.10(3)—that as a result of intoxication, he was rendered temporarily insane or lacked the mental ability to form the intent necessary to commit the offense. We disagree.

"Claims of instructional error are generally reviewed de novo by this Court, but the trial court's determination that a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007).

> A criminal defendant is entitled to have a properly instructed jury consider the evidence against him. When a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction. However, if an applicable instruction was not given, the defendant bears the burden of establishing that the trial court's failure to give the requested instruction resulted in a miscarriage of justice. The defendant's conviction will not be reversed unless, after examining the nature of the error in light of the weight and strength of the untainted evidence, it affirmatively appears that it is more probable than not that the error was outcome determinative. [*People v Riddle*, 467 Mich 116, 124-125; 649 NW2d 30 (2002) (citations omitted).]

M Crim JI 7.10(3) states: "A person can become legally insane by the voluntary, continued use of mind-altering substances like alcohol or drugs if their use results in a settled condition of insanity before, during, and after the alleged offense." The Use Note to paragraph 3 states:

> Use this paragraph only if the defendant is claiming that a settled condition of legal insanity resulted from voluntary substance abuse as described in *People v Conrad*, 148 Mich App 433[;] 385 NW2d 277 (1986). If the defendant plans to assert an insanity defense, an instruction such as this one must be given before testimony is presented on the issue. MCL 768.29a(1). Presumably this is true only where intoxication is an issue in the case. In *People v Anderson*, 166 Mich App 455, 466-467[;] 421 NW2d 200 (1988), the [C]ourt of [A]ppeals approved giving the statutory definition of MCL 768.21a, rather than CJI 7:8:02 (now M Crim JI 7.10). This instruction may also be given before jury deliberations (see M Crim JI 7.11).

At trial, the prosecutor opposed the defense request to read M Crim JI 7.10(3) to the jury, asserting that no expert concluded that defendant became legally insane as a result of voluntary use of mind-altering substances such that the result was a settled condition of insanity before, during, and after the alleged offense. The prosecutor further asserted that defense expert Dr. Shiener may have concluded that defendant was legally insane, but he failed to attribute it to drug use that caused a settled condition of insanity for the required period. On the contrary, defense counsel asserted that a factual question was presented on the issue because both Drs. Huby and Miller testified to defendant's voluntary drug use. Furthermore, defendant was treated with antipsychotic medication for ten months after the incident. The prosecutor submitted that

defense counsel was conflating insanity and psychosis, principles that Drs. Huby and Miller distinguished, and pressed defense counsel to identify factual support from Dr. Shiener's opinion. The trial court declined to provide the instruction.

A defendant is legally insane if, as a result of mental illness, he lacks substantial capacity either to appreciate the nature and quality or the wrongfulness of his conduct or to conform his conduct to the requirements of the law. MCL 768.21a(1); *People v Jackson*, 245 Mich App 17, 19; 627 NW2d 11 (2001). "Mental illness or having an intellectual disability does not otherwise constitute a defense of legal insanity." MCL 768.21a(1). An individual who is voluntarily intoxicated cannot argue that his intoxication rendered him insane unless "the voluntary continued use of mind-altering substances results in a settled condition of insanity before, during, and after the alleged offense." *People v Caulley*, 197 Mich App 177, 187 n 3; 494 NW2d 853 (1992) (citation omitted).

In this case, defendant did not assert an insanity defense based on voluntary intoxication. Dr. Shiener, the defense expert, testified that defendant told him that he did not use drugs before the incident. However, the testimony of both Dr. Huby and Dr. Miller established that defendant admitted that he was under the influence of drugs on the day in question. While there is evidence that defendant took antipsychotic medication following the incident, Dr. Huby testified that psychosis does not equate with insanity. Furthermore, there is no evidence that he had a settled condition of insanity after the incident. Because defendant's intoxication was voluntary and there was no correlation to a "settled condition of insanity before, during, and after the alleged offense," *Caulley*, 197 Mich App at 187 n 3, the trial court appropriately declined to give the requested instruction in light of the lack of factual support.

## III. ADMISSION OF EVIDENCE

Defendant contends that, because he was charged with an assaultive offense, he was denied a fair trial and unduly prejudiced when the trial court allowed the prosecution to question the expert witnesses about otherwise inadmissible character evidence regarding his prior assaultive conviction to show that he was not insane at the time of the offense. We disagree.

"This Court reviews for an abuse of discretion a trial court's decision to admit or exclude evidence." *People v Steele*, 283 Mich App 472, 478; 769 NW2d 256 (2009). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015). "Questions of law are reviewed de novo. Questions whether a defendant was denied a fair trial . . . are reviewed de novo." *Steele*, 283 Mich App at 478 (citations omitted).

Defendant filed a motion in limine requesting that his 2006 armed robbery conviction and 2014 murder charge be excluded from trial, citing the irrelevancy of the information. Defendant argued that the evidence was highly prejudicial and the defense expert did not rely on that evidence to form his opinion as to defendant's insanity at the time of the offense. The prosecution submitted that his expert witnesses considered the armed robbery conviction in forming their opinions, but did not consider the murder charge. The trial court held that the evidence of the robbery conviction was admissible because it was considered by the prosecutor's

experts in rendering an opinion on criminal responsibility, but precluded the murder charge evidence as more prejudicial than probative.

At trial, defendant's armed robbery conviction was mentioned during the prosecution's questioning of Dr. Huby. However, the facts and circumstances underlying the armed robbery conviction were not presented to the jury. Rather, Dr. Huby testified regarding defendant's treatment while imprisoned and noted that evidence of particular psychological disorders would have manifested during this time. Defendant's prison records reflected that he was only diagnosed with a personality disorder between 2006 and 2008, and there was no treatment for insanity.

Michigan follows "the rule that any and all conduct of an accused is admissible as evidence where the defense of insanity has been raised." *People v Lipps*, 167 Mich App 99, 109; 421 NW2d 586 (1988). See also *People v Woody*, 380 Mich 332, 338; 157 NW2d 201 (1968) ("Testimony of prior arrests, convictions, assaultive and antisocial conduct, ordinarily completely inadmissible as bearing on the general guilt or innocence of the accused of the offense charged, became material and admissible as bearing on the issue of [the defendant's] sanity.").

Evidence of defendant's prior armed robbery conviction was relevant and admissible on the issue of his insanity. *Lipps*, 167 Mich App at 109; *Woody*, 380 Mich at 338. The evidence of defendant's prior armed robbery could have cast doubt on whether he was actually insane at the time of his charged offenses. The prosecution's introduction of defendant's prior armed robbery, though otherwise inadmissible as bearing on his guilt or innocence, was therefore admissible to rebut his insanity defense. *People v McRunels*, 237 Mich App 168, 183; 603 NW2d 95 (1999), citing *Woody*, 380 Mich at 338. See also *People v Simonds*, 135 Mich App 214, 218; 353 NW2d 483 (1984) (noting that the concerns that underlie MRE 404(b) are not implicated where the challenged evidence of the defendant's past misconduct is introduced on the issue of the defendant's sanity, and not in an attempt to have the jury convict of the charged offense on the basis of past misconduct). Furthermore, the trial court properly instructed the jury regarding the limited use of this evidence, and that the other bad conduct did not warrant a verdict of guilty for the current charged offenses. "Jurors are presumed to follow their instructions . . . ." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Accordingly, the trial court did not abuse its discretion.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto